IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTICE SCOTT STADLER,

Plaintiff,

v.

TONYA MEYERS, MEGAN JANICKI, and JOHN HANSON,[1]

Defendants.

OPINION and ORDER

24-cv-695-jdp

---

Plaintiff Justice Scott Stadler, proceeding without counsel, alleges that government officials unreasonably arrested and detained him based on alleged violations of his extended supervision. I granted Stadler leave to proceed on Fourth Amendment and due process claims.

There are two sets of defendants. Defendant John Hanson is a police officer who arrested Stadler and defendants Tonya Meyers and Megan Janicki (who I will call "the state defendants") are probation officials who Stadler says were involved in deciding to detain him afterward. Both sets of defendants move for summary judgment. I conclude that I must abstain from considering Stadler's claims against Hanson, and I will grant summary judgment to the state defendants.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.[2]

---

[1] I will direct the clerk of court to amend the caption to reflect defendants Janicki's and Hanson's correct full names.

[2] Stadler moved for an extension of time to submit his summary judgment response materials given mailing difficulties that he had at a previous place of incarceration. Dkt. 108. I will grant

Plaintiff Justice Scott Stadler is a resident of Tomahawk, Wisconsin. At the times relevant to this case, defendant John Hanson was a police officer for the Wausau Police Department. Defendant Tonya Meyers worked for the Wisconsin Department of Corrections' Division of Community Corrections (DCC) as a probation and parole agent. Defendant Megan Janicki was a DCC supervisor.[3]

On the night of August 2, 2024, defendant Officer Hanson and another officer were dispatched to a residence in Wausau to search for a person named James Meriam, who had an active warrant. Meriam wasn't at the home. The officers saw a Nissan Sentra associated with Meriam there. The officers went to a second Wausau location frequented by Meriam; when they got there, the same Nissan Sentra was there, with plaintiff Stadler sitting in the car. After a police dog signaled the presence of narcotics in the car, police removed a backpack in which there were documents identifying Stadler and a baggie containing a substance resembling methamphetamines. Hanson arrested Stadler.

This arrest suggested that Stadler had violated the conditions of his extended supervision for a drug-related conviction in Lincoln County Case No. 2016CF325. Police contacted Department of Corrections staff, who confirmed that they would be seeking a probation hold to detain Stadler in jail. Defendant Janicki approved Stadler's transport to a local hospital immediately following the arrest rather than taking him directly to the Marathon County Jail.

---

that motion and I will consider all of Stadler's submissions.

[3] Janicki was formerly known by the last name Popenhagen as reflected in various documents related to this case.

Stadler was eventually charged with possession of methamphetamines and bail jumping. That criminal case is still pending. *See State v. Stadler*, Marathon County Case No. 2024CF750.

Under Wis. Admin. Code § DOC 328.27(2)(a), Stadler was held in the Marathon County Jail while defendant Meyers investigated the potential violation of his extended supervision conditions, even after he completed a signature bond. Consistent with § DOC 328.27(3), Meyers sought extensions of the usual five-working-day limit on detaining a probationer pending investigation of a violation. On August 20, 2024, Meyers formally determined that Stadler had violated the terms of his extended supervision by failing to report to his agent, resisting arrest, possessing illegal drugs, and violating a bond in another of his prior criminal cases. Stadler disputes all of these alleged violations.

Rather than seek revocation, Meyers offered him an "alternative to revocation" (ATR) placement in a residential services program for 180 days. As a condition of the agreement, Stadler would be required to obey the facility's rules and participate in all of its correctional programing. Stadler signed a "Alternative to Revocation Agreement" document agreeing to this plan. That document also stated, "I admit that I violated" the various conditions Meyers stated that he had violated. Dkt. 98-2, at 1. Officials also gave Stadler a "Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt" document stating that a preliminary revocation hearing wasn't required because, "You have given a signed statement admitting the violation(s)." Dkt. 98-3, at 2. Stadler signed the portion of this document acknowledging his receipt of it.

Although Stadler agreed to participate in this ATR placement, he wasn't immediately placed in a facility, given the waitlists for those placements. In the meantime, Stadler was held

at the Chippewa County Jail. Stadler was accepted into the Fahrman Center in Eau Claire on November 12, 2024.

Staff at the Fahrman Center terminated Stadler from the ATR placement on December 2, 2024. The discharge summary listed the reason for Stadler's discharge as "Non-participation, lack of motivation for change." Dkt. 111, at 5. The report stated in part that Stadler "is open and persistent with his beliefs that he has no substance use problem and has control over his use," and that he "attends group but interacts very little, becomes defensive when he is challenged with his thinking." *Id.* Stadler says that he "took [his] treatment seriously and was open and honest about [his] thoughts and views." Dkt. 113, ¶ 14.

On December 5, 2024, Stadler was placed back in jail by the DCC as a "short-term sanction" for violating his conditions of extended supervision by rejecting the ATR treatment. The parties do not explain who was directly responsible for this placement, but I infer that it was Meyers, his agent. Stadler also states that defendant Janicki attended a meeting between Stadler and Meyers in which they took Stadler's statement following his termination from the Fahrman Center.

Stadler was kept in jail on this sanction until March 1, 2025. Stadler did not receive a hearing before or during his time in jail.

I will discuss additional facts as they are relevant to the analysis.

## ANALYSIS

I granted Stadler leave to proceed on Fourth Amendment claims against defendant Hanson regarding his arrest and on Fourth Amendment and due process claims against the

state defendants for twice detaining him for violations of his extended supervision conditions. I will start with Stadler's claims against Hanson.

**A. Defendant Hanson**

Stadler proceeds on Fourth Amendment claims that Officer Hanson pursued, surveilled, and detained him under a warrant that he knew Stadler wasn't the subject of, and then arrested him for possession of methamphetamine even after Stadler showed documentation from the United States Drug Enforcement Administration allowing him to possess that substance. Hanson raises a number of arguments supporting his motion for summary judgment, but I need address only his argument that I must abstain from considering these claims under *Younger v. Harris*, 401 U.S. 37 (1971).

Principles of comity and federalism often preclude federal courts from hearing cases that interfere with ongoing state proceedings. In particular, federal courts must generally abstain from deciding a claim when doing so would interfere with a state's pending criminal prosecution. *Id.* at 43–44. Hanson states—and my own research confirms—that Stadler's criminal prosecution from this incident in Marathon County Case No. 2024CF750 is still pending. Stadler doesn't address this argument in his response brief. I will stay these claims under *Younger*, and Stadler may move to lift the stay after his criminal proceedings (including a direct appeal) have finished.

**B. State defendants**

**1. Detention pending ATR placement**

I granted Stadler leave to proceed on a due process claim that defendants Meyers and Janicki caused him to be detained for several months without a revocation hearing. The state defendants contend that Stadler cannot succeed against Janicki on this claim because her only

involvement in these events was issuing a warrant to allow Stadler to be taken to the hospital rather than the jail after his arrest; she wasn't involved in his continued detention after that point. Stadler doesn't dispute Janicki's lack of involvement in this part of his detention. So I will grant summary judgment to Janicki on this claim against her. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (liability under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional deprivation).

As for defendant Meyers, who did keep Stadler detained pending her investigation into his violations of the conditions of extended supervision and then while he waited for a spot in an ATR placement, a person facing a revocation has the due process right to a hearing "within a reasonable time." *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). This ordinarily includes two separate hearings: a preliminary hearing at which the decision maker must find "probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions," and a final decision on revocation regarding the "final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 485, 487–88.

I'll start with a discussion of the preliminary hearing. That hearing must be held "as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485. But the right to a preliminary hearing is not absolute. For instance, a preliminary hearing is not required when the probationer admits to committing acts that violate the conditions of supervision. *Id.* at 490; *Dumas v. Tucker*, No. 15-cv-454-jdp, 2017 WL 394512, at *2 (W.D. Wis. Jan. 27, 2017).

The state defendants seek summary judgment for Meyers regarding the lack of preliminary hearing, contending that Stadler admitted to violating the conditions of his

extended supervision. The state defendants submit (1) an "Alternative to Revocation Agreement" document signed by Stadler stating that he admitted to the violations cited by Meyers; and (2) a "Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt" document stating that a preliminary hearing wasn't required because "You have given a signed statement admitting the violation(s)."[4]

Stadler notes that he signed only the "receipt" portion of the second document; so I won't credit that document as an admission. But he doesn't address the first document, which on its face states that Stadler admitted to violating his conditions of extended supervision. Stadler instead argues that the state defendants violated various state probation-procedure regulations. But "the violation of an administrative rule is not the same thing as the violation of the Constitution." *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir. 1986); *see also Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Because no reasonable jury could conclude that Stadler was deprived of a due process right to a preliminary hearing given his waiver by admission, I will grant summary judgment to Meyers on this portion of his claim.

Stadler also never received a final revocation hearing. Instead he was held in custody for about 102 days until his ATR placement at the Fahrman Center came available. The parties dispute whether this long pre-placement detention violated Wisconsin statutes or administrative regulations. There is not a clear answer in those provisions. For instance, Stadler

[4] In their reply materials, the state defendants also submit a statement signed and initialed by Stadler in which he admitted to various violations. Dkt. 116-1. But because Stadler hasn't been given a chance to respond to this document, I will not consider it.

cites Wis. Stat. § 302.113(8m)(b), which limits to 90 days the time that the DCC can unilaterally sanction a person on extended supervision "who signs a statement admitting a violation of a condition or rule of extended supervision." But that isn't what occurred here. Stadler wasn't being detained as a sanction, he was being held in custody while the DCC finalized an ATR placement for him. As the state defendants note, under Wis. Admin. Code § DOC 328.27(1)(e), a probationer may be held in custody pending placement in an ATR program. But that provision doesn't explain how long that placement may last. The real backstop here appears to be Wis. Stat. § 302.335(2)(b), under which a final revocation hearing must generally be held within 50 days of a person's detention. So even after initially agreeing to the ATR, once his detention lasted longer than 50 days, Stadler may have been able to seek relief in state court.

But as I've already stated, the key question in this federal civil rights lawsuit isn't whether Meyers or other DCC officials complied with statues or regulations; the question is whether this length of pre-ATR detention violated Stadler's due process rights. The answer to that question is almost certainly not. When a probationer contends that his due process right to a timely hearing has been denied, the Court of Appeals for the Seventh Circuit considers the four factors discussed in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), for determining whether a defendant's Sixth Amendment right to a speedy trial has been denied: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy adjudication; and (4) and the prejudice to the defendant as a result of the delay. *United States v. Rasmussen*, 881 F.2d 395, 398 (7th Cir. 1989). The court also considers the reason for the probationer's custody: the revocation itself or another criminal charge. *Id.*

When a plaintiff faces only a short delay, that factor alone is sometimes dispositive. But the sheer amount of delay here is enough to lead me to consider the other factors. *See Hanahan v. Luther*, 693 F.2d 629, 634 (7th Cir. 1982) ("the four-month delay, while not *per se* unreasonable, raises a due process question."). Some of those factors favor Stadler. For instance, Stadler might have been prejudiced by the detention because it is not certain that he will ever get to credit the time that he spent in custody here against any other obligation. And he was held in custody purely for the revocation decision, as opposed to the charges generated by the incident. Other factors work against Stadler: he is ultimately partially responsible for the delay because he agreed to forgo standard revocation proceedings to try the ATR program instead. There is no indication that Stadler pushed for a quicker placement or sought to undo his ATR agreement. And it's undisputed that the delay here was caused by a backlog in placements at ATR facilities, not misconduct by Meyers or other DCC officials—in his briefing Stadler concedes that he doesn't believe Meyers maliciously delayed in placing him.

Courts have ruled against plaintiffs in cases involving similar or longer delays where the plaintiff is partially responsible for the delay, the plaintiff doesn't seek earlier resolution, or there are other causes for the delay out of the defendant's control. *See, e.g.*, *United States v. Husband*, 820 F. App'x 457, 459 (7th Cir. 2020) ("It is not obvious that the five-month delay between [plaintiff's] initial appearance and revocation hearings was unreasonable" after plaintiff caused part of it); *Rasmussen,* 881 F.2d at 400 (13-month delay not unreasonable in part because plaintiff didn't press for resolution of revocation petition); *United States v. Scott*, 850 F.2d 316, 320 (7th Cir. 1988) (13-month delay "gives [court] pause" but not unreasonable in part because district court's calendar caused majority of delay and plaintiff didn't press his right to a faster resolution).

In any event, Meyers would be entitled to summary judgment under the doctrine of qualified immunity. Under that doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Stadler doesn't respond to the state defendants' invocation of qualified immunity with any citation to caselaw showing how the *Barker* factors would apply to a situation like this one, where a probationer is knowingly forestalling a revocation hearing to pursue an alternative to revocation, and my own research does not reveal any cases clearly establishing the law on this issue. Rather, Stadler continues to argue that Meyers violated state statutes or regulations in maintaining his detention, but that simply isn't enough to establish a due process violation. I will grant summary judgment to Meyers on this claim.

**2. Seizure after removal from ATR program**

I granted Stadler leave to proceed on a Fourth Amendment claim against Meyers and Janicki for seizing him following his removal from the ATR program.

Parolees and probationers have reduced Fourth Amendment rights; they may be searched or seized on the basis of "reasonable suspicion" that the person violated the terms of

his supervision, parole, or probation. *United States v. Knights*, 534 U.S. 112, 121 (2001); *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). The reasonable-suspicion standard requires "'something less than probable cause but more than a hunch,' which exists when there is some 'objective manifestation' that a person is, or is about to be, engaged in prohibited activity." *Knox*, 342 F.3d at 659 (quoting *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003)).

The summary judgment record shows that Stadler's Fourth Amendment claim is meritless. The parties do not submit Stadler's conditions of extended supervision, but they agree that "rejecting treatment" would violate those conditions. Defendants detained Stadler only after he was terminated from his ATR placement by staff there, with staff's stated reason being "Non-participation, lack of motivation for change." Dkt. 111, at 5. That was enough to meet the relatively low bar of reasonable suspicion that he had rejected his ATR treatment. So I will grant summary judgment to the state defendants on this claim.

**3. Prolonged detention as sanction**

One final point. The facts here raise another potential theory of relief that was not apparent when I screened Stadler's complaint: that regardless the reasonableness of Stadler's seizure following his termination from the ATR program, the state defendants violated his due process rights by unilaterally sanctioning him with 90 days of jail under rather than formally revoking his supervision, which would have entitled him to preliminary and final hearings. Unlike with Stadler's Fourth Amendment claim, a due process claim isn't subject to a reasonable suspicion standard. Rather, the DCC may sanction a probationer without a hearing only when the probationer admits to committing an act that violates a term of supervision. *Morrissey*, 408 U.S. at 490; Wis. Stat. § 302.113(8m)(b); Wis. Admin. Code § DOC 328.27(7).

The state defendants maintain that Stadler admitted to "rejecting treatment" after he was removed from the ATR program; their evidence for this admission is the Fahrman Center's discharge note and a written statement by Stadler. But in neither of those documents does Stadler explicitly admit to "rejecting treatment." Rather, in his signed statement, Stadler admitted that he told Fahrman Center staff that he would continue to seek out meth or similar substances, but he also states, "I don't know why I was discharged." Dkt. 116-2. It's also undisputed that Stadler was terminated by staff; Stadler didn't quit treatment on his own. Based on the limited record before me, I am not convinced that the state defendants complied with the Due Process Clause when they interpreted Fahrman Center staff's termination of Stadler, admittedly a difficult patient, as Stadler's *rejection* of that treatment and thus a violation of his supervision conditions.

In different circumstances I might amend my screening order to include this due process theory and have the parties provide supplemental briefing on it. But given the dearth of binding authority on the question of how much leeway a probation agent has to interpret a probationer's statements as an admission of a violation, any amendment would be futile because of qualified immunity. So I will dismiss the case.

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to amend the caption as reflected in the opinion above.

2. Plaintiff's motion for extension of time, Dkt. 108, is GRANTED.

3. Defendant Hanson's motion for summary judgment, Dkt. 84, is GRANTED in part. Plaintiff's claim against defendant Hanson is STAYED under *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff must move to lift the stay within 30 days after the conclusion of the above criminal proceeding, which includes any direct appeal. If

plaintiff fails to comply with this order, the case will remain closed, and plaintiff may be barred by the statute of limitations from bringing his claims in any future case.

4. The state defendants' motion for summary judgment, Dkt. 93, is GRANTED.

5. The clerk of court is directed to enter judgment accordingly and close the case.

Entered October 13, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge